NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

IN RE:                          )
                                )
IN MONICA TERESA ORDAZ, fdba    )  Case No. 19-20518-C-7
CENTRAL VALLEY ACCOUNTING, INC. )
                                )
                                )
_____Debtor.  )  Adv. Pro. 2019-02056
                                )
PEDRO JULIAN GONZALEZ, dba      )
PEDRO J. GONZALEZ, FLC,         )
                                )
                Plaintiff,      )
v.                              )
                                )
MONICA TERESA ORDAZ, and fdba   )
CENTRAL VALLEY ACCOUNTING, INC. )
                                )
                Defendants.     )
_____)


**MEMORANDUM**

Penalties of $572,165 were imposed on Plaintiff due to Debtor's failure to submit required information returns for four tax years to the Internal Revenue Service. The penalties were merely for post-issuance reporting defects with W-2 Information Returns, even though all W-2 forms were timely issued to employees and all taxes paid. The Plaintiff, who speaks no English, relied on Defendant for compliance with all tax procedures. He seeks a nondischargeable money judgment measured by the legal expense of obtaining remission of some of the penalties, plus the remaining unremitted penalty. The theories sound in fraud and fraud and defalcation while acting in a fiduciary capacity.

This Court finds for plaintiff on both counts and awards the

requested damages.

<u>Procedure</u>

Trial was held before the undersigned Bankruptcy Judge. A Certified Spanish Interpreter simultaneously translated the proceedings. The Plaintiff and Defendant-Debtor testified, as did the Plaintiff's spouse, his tax attorney, and an expert witness.


<u>Findings of Fact</u>

Plaintiff Pedro Julian Gonzalez, who does not speak English, has operated a licensed farm-labor contracting business with up to 1000 employees in Colusa County, California, since about 2003. Gonzalez, himself, also works in the fields alongside his employees. He is assisted in the business by his spouse, Margarita Gonzalez, who likewise has only rudimentary English.

From 2004 to 2017, Defendant-Debtor Monica Ordaz, who initially was associated with H.& R. Block but soon began operating independently, performed payroll and employment tax preparation duties. She also did business under the name Central Valley Accounting, Inc., which entity has no articles of incorporation, no directors, and no meetings, and is here deemed a sole proprietorship operating with a fictitious business name.

Ordaz has a CTEC license from the State of California to prepare income tax returns and is required to receive 20 hours/year of continuing education that covers such topics as federal tax laws and ethics.

As time passed, Ordaz became Gonzalezs' trusted interface with the English-speaking world.

Ordaz agreed to handle all correspondence with the Internal

Revenue Service and the Social Security Administration. She prepared papers to obtain and maintain other necessary business licenses. She reviewed and assisted in a workers' compensation claim that arose. She worked with Gonzalez to communicate with insurance brokers. She assisted Gonzalez in responding to requests from the Occupational Safety and Health Administration.

Ordaz regularly invoiced Plaintiff for her services, which invoices were paid regularly by Plaintiff. In 2014, for example, the payments to Ordaz for services totaled approximately $50,000.

Beginning in 2011, an issue arose with the IRS regarding required transmissions to the IRS of reports of W-2 statements that had been issued to employees.

There was no contention that required taxes and social security withholding were not actually paid. Rather, the problem was that they were not being correctly reported.

For a number of years beginning in 2011, Gonzalez would receive written communications from the IRS regarding the problem. Because he did not read or understand English, Ordaz asked that they be turned over to her to be handled. He did not understand that those IRS letters were notices of deficiencies and notices of intent to impose penalties.

Ordaz did not advise Gonzalez of the nature of the problem. She did indicate at one point that there was a "problem with the IRS" but said that it was an IRS mistake, that everything had been done correctly, and that Gonzalez had nothing to worry about.

In 2014, Ordaz persuaded Gonzalez to execute a power of attorney in her favor to deal with the IRS on his behalf.

1    Also in 2014, Ordaz persuaded Gonzalez to designate her as
2   his personal representative with the Social Security
3   Administration.

4    When penalties were assessed by the IRS in letters that the
5   Gonzalezs did not understand and that they turned over to Ordaz,
6   Ordaz did not inform them that they were penalty assessments.

7    Margarita Gonzalez testified, credibly, that Ordaz kept
8   reassuring them that "everything was fine" and "done correctly"
9   and that she was handling the issues.

10   Ordaz did not at any time before October 2017 indicate that
11  IRS penalties were threatened or being imposed.

12   Throughout the period 2004-2017, Ordaz submitted regular
13  invoices to Gonzalez, which he paid. The invoices included
14  services for filing W-2s and for communications with the IRS. As
15  noted, the invoices for 2014 were approximately $50,000.

16   Everything came to a crisis in 2017 when the IRS levied on
17  the Gonzalez bank accounts to collect the penalties.

18   Gonzalez went to the Social Security Administration office
19  in Yuba City, California, and inquired if there was some problem
20  with tax filings and submissions. He learned for the first time
21  that no W-2 information returns had been filed since 2011.

22   The penalties imposed under Internal Revenue Code § 6721
23  were:

24   Tax Year 2011: $38,640
25   Tax Year 2013: $23,460
26   Tax Year 2014: $339,505
27   Tax Year 2016: $170,560
28  Total: $572,165

1  Gonzalez engaged tax attorney Ulises Pizano-Diaz, who
2  eventually was able to persuade the IRS to waive the penalties
3  for 2011, 2013, and 2014.

4  Counsel Pizano-Diaz, however, was not successful in
5  obtaining waiver of the $170,165 penalty for 2016. That penalty,
6  unlike the earlier penalties, was imposed against Gonzalez Farm
7  Labor Services LLC, of which Gonzalez is the sole member.

8  Gonzalez paid counsel Pizano-Diaz $32,839.84 for his
9  services in obtaining remissions of the penalties for Tax Years
10  2011, 2013, and 2014 and urging remission for Tax Year 2016.

11
12  <u>Jurisdiction</u>
13  Subject-matter jurisdiction is founded on 28 U.S.C.
14  § 1334(b). This is a core proceeding that a Bankruptcy Judge may
15  hear and determine. 28 U.S.C. § 157(b)(2)(I).

16
17  <u>Conclusions of Law</u>
18  Gonzalez contends that Defendant Ordaz obtained money in the
19  form of invoices for services by false pretenses, false
20  representation, or actual fraud as provided by 11 U.S.C.
21  § 523(a)(2)(A).

22  In the alternative, Gonzalez contends Ordaz is liable to him
23  for fraud or defalcation while acting in a fiduciary capacity as
24  provided by 11 U.S.C. § 523(a)(4).

25
26  I
27  <u>Fraud: 11 U.S.C. § 523(a)(2)</u>
28  The § 523(a)(2)(A) exception to discharge applies to a debt

1  for money, property, services, or an extension, renewal, or

2  refinancing of credit, to the extent obtained by false pretenses,

3  a false representation, or actual fraud, other than a statement

4  in writing respecting the debtor's or an insiders financial

5  condition. 11 U.S.C. § 523(a)(2)(A).

6

7                                    A

8       The initial question at the threshold is whether a debt for

9  a tax penalty caused by a person who was employed and paid to

10 provide the services that triggered the penalty qualifies as a

11 debt for money, property, or services.

12      That question is here answered in the affirmative. The

13 Defendant was employed and paid to provide, among other things,

14 tax and accounting services for a client with as many as 1000

15 employees. In one year alone, the client paid Defendant $50,000.

16 The defective performance of those services led to penalties

17 against the client totaling $572,165. Hence, the client as

18 Plaintiff has a claim for a debt based upon those penalties.

19

20                                    B

21      Next is the question whether the debt was incurred by false

22 pretenses, false representation, or actual fraud.

23      The standard analysis of false representation equates with

24 the essential elements of the common law tort of intentional

25 misrepresentation. Field v. Mans, 516 U.S. 59, 69-70 (1995).

26      The usual essential elements for a § 523(a)(2)(A) false

27 representation as set forth in the law of the Ninth Circuit in

28 light of Field v. Mans are:

(1) The Defendant made representations;
(2) The Defendant knew at the time they were false
(3) The Defendant made the representations with the
    intention and purpose of deceiving the creditor;
(4) The creditor justifiably relied on such representations;
(5) The creditor sustained the alleged loss and damage as
    the proximate result of the representations.

Citibank (South Dakota), N.A. v. Eashai (In re Eshai), 87
F.3d 1082, 1086 (9th Cir. 1996).

The facts of this case fit within those essential elements:
(1) Ordaz represented to Gonzalez that the communications from
the IRS related to mistakes by the IRS, that everything was fine,
and that Gonzalez had nothing to worry about and had no
responsibility for the problem; (2) In fact, Ordaz knew that
everything was not fine with the IRS; (3) Ordaz made the
assurances to keep Gonzalez from inquiring further; (4) Gonzalez,
based on his long-term experience of relying on Ordaz for such
matters, justifiably relied on her lulling representations; and
(5) As a proximate result, Gonzalez sustained the damage of
$572,165 in tax penalties, all but $170,560 he was able to have
remitted only with the assistance of tax counsel to whom Gonzalez
was required to pay $32,839.84 in legal fees.

The Supreme Court has recently clarified that the term
"actual fraud" in § 523(a)(2)(A) is a broader concept that does
not necessarily require a false representation and, hence, can
encompass fraudulent conveyances. Husky Int'l Elecs., Inc. v.
Ritz, 578 U.S. 355, 366 (2016).

The potential relevance of Husky for the count under
§ 523(a)(2)(A) is that, if one were to view this trier of fact's
analysis of the Defendant's "representations" as outside the
proverbial baseball umpire's strike zone, then such a conclusion

1  would not necessarily be fatal to the exception to discharge.

2

3  II

4  Breach of Fiduciary Duty: 11 U.S.C. § 523(a)(4)

5  The § 523(a)(4) discharge exception for "fraud or

6  defalcation while acting in a fiduciary capacity" requires proof

7  of a fiduciary capacity and either fraud or defalcation with

8  respect to an express trust. Ragsdale v. Haller, 780 F.2d 794,

9  796 (9th Cir. 1986), citing Davis v. Aetna Acceptance Co., 293

10  U.S. 328, 333 (1934).[1]

11  The standard of proof for the § 523(a)(4) discharge

12  exception is preponderance of the evidence. Retz v. Samson (In re

13  Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

14  Whether a relationship is a fiduciary one within the meaning

15  of § 523(a)(4) is a question of federal law. Ragsdale v. Haller,

16  780 F.2d 794, 796 (9th Cir. 1986). Whether a trustee is a

17  fiduciary chargeable under § 523(a)(4) is determined by reference

18

19  [1]The current understanding of "fraud or defalcation while

20  acting in a fiduciary capacity" requiring in all instances an
   express trust to exist before the alleged wrongdoing renders the

21  words "fraud or" to be mere surplusage. The Supreme Court's
   analysis of similar surplusage in Husky, and its invocation of

22  the role of common law in Field v. Mans, may presage a view that
   the plain language of § 523(a)(4) contemplates two

23  nondischargeable alternatives: "fraud while acting in a fiduciary
   capacity" not requiring an express trust and "defalcation while

24  acting in a fiduciary capacity" requiring an express trust. Some
   courts have started to push back at the strict express trust

25  requirement in clear fiduciary misconduct situations. Andy Warhol
   Found for Visual Arts, Inc. v. Hayes (In re Hayes), 183 F.3d 162

26  (2d Cir. 1999); In re Cochrane, 124 F.3d 978 (8th Cir. 1997),

27  cert. denied, 522 U.S. 112 (1998). Nevertheless, for the moment,
   courts are left to resort to stretching the meaning of express

28  trust in ever more tenuous analyses until eventually someone
   recognizes the Emperor has no clothes.

to state law. Id.

The accepted elements of the § 523(a)(4) discharge exception in this instance are: (1) express trust existed between Ordaz and Gonzalez; (2) the debt was caused by Ordaz's fraud or defalcation; and (3) Ordaz was a fiduciary to Gonzalez at the time the debt was created. Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997); Nahman v. Jacks (In re Jacks), 266 B.R. 728, 735 (9th Cir. BAP 2001).

It is significant that in 2014 Ordaz requested and obtained, first, a power of attorney to deal on behalf of Gonzalez with the Internal Revenue Service and, second, an authorization to act as personal representative of Gonzalez with the Social Security Administration.

The power of attorney and the designation as personal representative created a principal-agent relationship that California recognizes as a fiduciary relationship.

The evidence is that the IRS penalties of $562,165 were not imposed on Gonzalez until after Ordaz obtained the Gonzalez power of attorney and the designation as his personal representative.

Ordaz was aware of the lack of sophistication of Gonzalez on tax matters and of his near-total reliance upon her, especially in view of his inability to read English and understand notices that were being sent from the IRS.

Armed with the power of attorney, Ordaz had a duty to keep Gonzalez apprised of the situation with the IRS. Instead, she did not disclose to him the fact that penalties were being imposed. Rather, she told him that he was not being penalized. The first Gonzalez learned of the actual penalties was in 2017 when

enforcement action was taken against his bank accounts. At that point, Ordaz was nowhere to be seen. Gonzalez was forced to hire tax counsel to attempt to extricate him from the predicament.

Also relevant to whether there was a fiduciary relationship is the role that Ordaz played as business advisor and translator in other business dealings involving Gonzalez in a fashion that cumulatively adds up to a fiduciary relationship.

Applying the facts to the essential elements yields the following conclusions. First, an express trust existed between Ordaz and Gonzalez memorialized by the 2014 power of attorney by which Gonzalez placed in Ordaz his affairs with the Internal Revenue Service and designated Ordaz as his personal representative with the Social Security Administration. Second, the debt was caused by Ordaz's fraud or defalcation in the form of telling Gonzalez that the IRS issues were a mistake by the IRS and that everything was "fine" when, in fact, she knew it was not "fine" and showed reckless disregard when she should have known it was headed to imposition of significant financial penalties in circumstances in which Gonzalez, if Ordaz had honored her duties of loyalty and candor to him, could have remedied the situation. Third, Ordaz was a fiduciary to Gonzalez at the time the debt was created by virtue of the power of attorney and designation as personal representative with the Social Security Administration, and independently, by the structure of her overall relationship with the Gonzalez business in which she assisted in his interfaces with the English-speaking business world.

In these circumstances, California courts recognize fiduciary relationships. See, e.g., Stokes v. Henson, 265 Cal.

10

Rptr. 836 (Cal. Ct. App. 1990).

### III

<u>Damages</u>

The damages consist of the IRS penalties for not filing information returns that totaled $572,165 ($38,640 + $23,640 + $339,505 + $170,560 = $572,165). The legal fees expended in obtaining remissions of all penalties except $170,560 were $32,839.34 ($3,577.18 + $29,262.66 = $32,839.84).

The net damages are the sum of the unremitted IRS penalties and the legal fees expended in obtaining remissions from the IRS: $203,998.34 ($170,560 + $32,839.84 = $203,998.34).

### Conclusion

A judgment will be entered awarding Plaintiff Pedro Julian Gonzalez the amount of $203,998.34 against Defendant Monica Teresa Ordaz, which sum is declared to be excepted from the bankruptcy discharge of Monica Teresa Ordaz by virtue of 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4).

Dated: September 12, 2024

_____
United States Bankruptcy Judge